FILED & ENTERED

SEP 21 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

1

2

3

4

5

6

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                      SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:09-bk-15145-RK |
| VINCENT LEE JONES, | Chapter 7 |
| Debtor. | Adversary No. 8:09-ap-01540-RK |
| KLARIN & ASSOCIATES, a California corporation, as TRUSTEE OF THE JANET L. HARLOW TRUST; and KLARIN & ASSOCIATES, a California corporation as personal respresentative of the ESTATE OF JANET L. HARLOW, | MEMORANDUM DECISION RE: ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523(a)(2), (4) and (6) |
| Plaintiffs, vs. | |
| VINCENT JONES, an individual; and DOES 1 through 25, inclusive, | |
| Defendants. | |

        This adversary proceeding was tried before the undersigned United States

Bankruptcy Judge on July 15, 2010 on the complaint of plaintiffs Richard Harlow, Jr., and

Leigh Ann Harlow as Trustees of the Janet L. Harlow Trust and as personal

representatives of the Estate of Janet L. Harlow, for determination of dischargeability of

debt claim against defendant Vincent Lee Jones, debtor.  Michael J. Buley, Law Offices

of Michael J. Buley, appeared for plaintiffs.  Defendant Vincent Lee Jones appeared pro

1 se.  After parties filed designations of the transcript of the deposition of Vincent Lee

2 Jones on July 28 and 29, 2010, the court took the matter under submission.

3     Having considered the testimony of the witnesses, the exhibits admitted into

4 evidence, and the written and oral arguments of the parties on the matters before the

5 court, the court now issues this memorandum decision.

6     On September 9, 2009, plaintiffs Klarin & Associates, a California corporation, as

7 the trustee of the Janet L. Harlow Trust, and Klarin & Associates, a California corporation,

8 as personal representative of the Estate of Janet L. Harlow filed an adversary complaint

9 and alleged that defendant owed a debt to them which is excepted from discharge in

10 debtor's Chapter 7 bankruptcy case under 11 U.S.C. § 523(a)(2), (4) and (6) on grounds

11 that defendant incurred debt by obtaining funds from the trustor and decedent, Janet L.

12 Harlow, through false pretenses or representations, defalcation in a fiduciary capacity

13 and willful and malicious conduct.  On June 14, 2010, upon motion to substitute plaintiff,

14 Richard L. Harlow, Jr., and Leigh Ann Harlow, successor trustees of the Jean L. Harlow

15 Trust and successor personal representatives of the Estate of Janet L. Harlow were

16 substituted as the plaintiffs in this adversary proceeding.  Although Doe defendants were

17 named in the complaint, the case docket for this adversary proceeding reflects that no

18 other defendant was served with the summons and complaint other than defendant

19 Vincent Lee Jones, or had appeared in this adversary proceeding.  Accordingly, all

20 defendants other than Vincent Lee Jones are dismissed.

21     The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

22 157(a) and (b)(1) and (b)(2)(I) and 1334(b), and venue is proper in this judicial district

23 pursuant to 28 U.S.C. § 1409(a).

24     The pretrial order filed on June 9, 2010 sets forth certain facts which have been

25 admitted to by the parties, which the court now finds.  Notice of Entry of Pretrial Order at

26 2, ¶¶ 1-12.

27     Plaintiff Klarin and Associates, Certified Public Accountants, is a California

28 corporation, and Trustee of the Janet L. Harlow Trust and the personal representative of

2

1  the Estate of Janet L. Harlow.  The Janet L. Harlow Trust was created on July 3, 2004, by

2  written trust agreement.  Janet L. Harlow ("Harlow") died on May 9, 2007.

3       Defendant Vincent Lee Jones resides in Huntington Beach, California, and is the

4  debtor in the Chapter 7 bankruptcy case filed as Case No. 8:09-bk-15145.

5       Janet L. Harlow at all relevant times was the owner of a piece of real property

6  commonly known as 125 G Street, Balboa, California (the "Property").

7       Janet L. Harlow at all relevant times was the owner of a brokerage account with

8  Morgan Stanley ("Morgan Stanley Account").

9       The Property and the Morgan Stanley Account were transferred as assets into the

10  Janet L. Harlow Trust in July 2004.

11       Defendant Vincent Lee Jones befriended Janet L. Harlow during periods 1989 to

12  1990.

13       Janet L. Harlow was 69 years old at the time of her death in 2007.

14       During the period 2002 to 2003, defendant Vincent Lee Jones received

15  approximately $220,000 from Janet L. Harlow.

16       The $220,000 received by Vincent Lee Jones from Janet Harlow was money

17  obtained by Vincent Jones assisted Janet L. Harlow in procuring a home equity loan line

18  of credit against her home and through assisting her in withdrawing funds from her

19  Morgan Stanley Account.  None of the $220,000 has ever been repaid to Janet L. Harlow

20  directly or to the Janet L. Harlow Trust.

21       After trial, the court also makes other factual findings set forth in this

22  memorandum decision.

23       On May 29, 2009, defendant and his spouse, Darlene Jo Jones, commenced this

24  bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy

25  Code, 11 U.S.C.  Defendant and his spouse listed Klarin and Associates as a general

26  unsecured creditor on Schedule F to the bankruptcy petition for a "lawsuit" for a claim in

27  the amount of $458,000.00 and asserted that the claim was "contingent, unliquidated and

28

1    disputed."  On September 9, 2009, the Chapter 7 trustee filed a report of no distribution,

2    and on November 25, 2009, a discharge of debtors was entered in the bankruptcy case.

3        In the adversary complaint, plaintiffs alleged that defendant was a construction

4    contractor who performed work on the Property on multiple occasions and regularly made

5    social visits to Harlow, thereby gaining Harlow's confidence and trust.  Complaint at 3, ¶

6    16.  These facts are not disputed by defendant who testified at trial that he was a

7    licensed California construction contractor who performed work for Harlow on the

8    Property on multiple occasions and regularly made social visits to her.  Trial Testimony of

9    Vincent Lee Jones, July 15, 2010; Deposition Testimony of Vincent Lee Jones, April 15,

10   2009 and May 5, 2009 (marked as *Exhibits 21A and 32B*).

11       Plaintiffs' witnesses, Richard Harlow, Harlow's son, and Dennis Klarin, former

12   trustee of the Harlow Trust and former personal representative of the Harlow estate, gave

13   testimony at trial that they were aware that defendant was performing construction work

14   for Harlow at the Property and that defendant paid social visits to Harlow as a friend.

15   Trial Testimony of Richard Harlow, July 15, 2010 at 9:40 to 9:46 a.m.; Direct Examination

16   of Richard Harlow, Jr. ("Trial Declaration of Richard Harlow"), filed on July 1, 2010, at 3.

17   Richard Harlow acknowledged that he was hired by defendant to do some of the

18   construction work.  Trial Testimony of Richard Harlow, July 15, 2010 at 9:52-9:53 a.m.

19       For the reasons discussed herein, the court concludes that defendant's debt

20   should not be excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), (4) and (6).

21       I.      Plaintiffs' first cause of action under 11 U.S.C. § 523(a)(2)(A)

22               (false pretenses or representations)

23       As the parties asserting that a debt is excepted from discharge, plaintiffs bear the

24   burden of proof to establish that the debt is excepted under 11 U.S.C. § 523 from a

25   debtor's discharge by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S.

26   279, 287 (1991).

27       Plaintiffs allege that the debt owed by defendant to them is excepted from

28   discharge under 11 U.S.C. §523(a)(2) on grounds that defendant incurred the debt by

4

1   obtaining funds from Harlow through false pretenses or misrepresentation. [1]  Complaint

2   at 3-8.

3          11 U.S.C. 523(a)(2)(A) provides that "[a] discharge under section 727, 1141,

4   1228(a), 1228 (b) or 1328(b) of this title does not discharge an individual debtor from any

5   debt--. . . . (2) for money, property, services, or an extension, renewal, or refinancing of

6   credit, to the extent obtained, by--(A) false pretenses, a false representation, or actual

7   fraud, other than a statement respecting the debtor's or an insider's financial condition."

8   *See also Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1086 (9th

9   Cir. 1996); *Mandalay Resort Group v. Miller (In re Miller)*, 310 B.R. 185, 199-202 (Bankr.

10  C.D. Cal. 2004).  To render a debt nondischargeable under § 523(a)(2)(A), the following

11  must be shown by a preponderance of the evidence:  (1) that the debtor made the

12  representations at issue; (2) that at the time the debtor knew they were false; (3) that the

13  debtor made those representations with the intention and purpose of deceiving the

14  creditor; (4) that the creditor justifiably relied on such representations; and (5) that the

15  creditor sustained the alleged losses as the proximate result of the representations

16  having been made.  *In re Eashai*, 87 F.3d at 1086; *Britton v. Price (In re Britton)*, 950

17  F.2d 602, 604 (9th Cir. 1991); *see also,* 4 March and Ahart, *California Practice Guide:*

18  *Bankruptcy,* ¶ 22:452 at 22-53 (2009).  Plaintiffs must prove each of these elements of a

19  claim under § 523(a)(2)(A) by a preponderance of the evidence.  *In re Eashai*, 87 F.3d at

20  1086; *see also, Grogan v. Garner*, 498 U.S. 279, 291 (1991).

21          Under § 523(a)(2)(A), plaintiffs must prove that the first element of the claim that

22  defendant made the representations at issue.  *In re Eashai*, 87 F.3d at 1086.  In the

23  complaint, plaintiffs allege on information and belief as follows:

24

25  [1]  Although plaintiffs style their first cause of action under 11 U.S.C. § 523(a)(2), the court construes their
        claim only under 11 U.S.C. § 523(a)(2)(A) and not 11 U.S.C. § 523(a)(2)(B).  Nowhere in the
26      complaint do plaintiffs allege that they suffered damage as a result of a written representation of
        fact by defendant as to his financial condition, which was materially false, which allegations are
27      required to assert a claim under 11 U.S.C. § 523(a)(2)(B).  11 U.S.C. § 523(a)(2)(B); *In re Siriani,*
        967 F.2d 302, 304 (9th Cir. 1992).

28

(1) In 2002 and 2003 Defendant made representations to Harlow that if Harlow would lend him money, he would secure this loan by giving her an interest in various pieces of real estate he intended to acquire and remodel, even though, unbeknownst to Harlow, his true intention was to use the funds for his own benefit;

(2) Defendant represented to Harlow that he would use the monies from Harlow's home equity line of credit and the Morgan Stanley Account which Harlow loaned to Defendant to acquire and remodel real property for the purpose to resell it for profit and that he will secure this loan by giving her an interest in the pieces of real property he acquired;

(3) Defendant falsely represented to Harlow that she would have a secured interest in the pieces of the real property and obtain a portion of the sale proceeds derived from the sale of real property; and

(4) At some time during his regular visits to Harlow at her residence between June 2002 and December 2003, Defendant represented to Harlow that if she would loan him funds to be secured by real property, he would use these funds for her benefit and in her best interest.

Complaint at 3-4 and 6, ¶¶ 17-19, 38-39.

To show the falsity of defendant's alleged representations, plaintiffs alleged in the complaint that defendant had obtained monies from Harlow's Morgan Stanley Account and an equity line of credit secured by the Property, that defendant used the monies to buy a piece of real property in Long Beach, California, which he developed and sold without giving any of the proceeds to Harlow. *Id.* at 4, ¶¶ 20-21. Plaintiffs further alleged in the complaint that defendant used Harlow's monies to purchase four undeveloped parcels of land in Riverside County, built houses on two of the parcels and sold two undeveloped parcels and one developed parcel at some time between 2005 and 2006, leased the remaining developed parcel and received rental income and did not provide any of the proceeds of sale or rental income to Harlow. *Id.* at 4, ¶¶ 22-26.

6

1   At trial, defendant in his testimony did admit some of the facts alleged by plaintiffs

2   in their complaint, but denied others.

3   In August 2002, Harlow executed a special power of attorney authorizing

4   defendant to access her checking account with Long Beach Schools Federal Credit

5   Union, to mortgage or encumber the Property in an amount not to exceed $300,000, to

6   manage, insure, repair, collect rents, execute leases or take any action a landlord would

7   have over any of her interests in real estate, to obtain credit or borrow money up to

8   $300,000 and to disclaim any interest that may be transferred or distributed to her.

9   *Exhibit 6;* Jones Trial Testimony, July 15, 2010 at 10:21 a.m.; Jones Deposition

10  Testimony at 117, 128-136.

11  Defendant admitted that he had obtained funds from Harlow's home equity line of

12  credit and her Morgan Stanley Account, which is corroborated by account statements and

13  cancelled checks showing that defendant had received these funds from Harlow.  Jones

14  Trial Testimony, July 15, 2010 at 10:16-10:26 a.m.  In October 2002, Harlow took out a

15  home equity line of credit ("HELOC") in the amount of $300,000 from Wells Fargo Bank,

16  which was secured by a trust deed on the Property.  *Exhibits 9, 10 and 14.*  It appears

17  that Harlow drew $228,361.39 on the HELOC to pay off her existing mortgage on

18  November 12, 2002.  *Exhibit 14.*  (Defendant testified that he did not receive any of this

19  amount of $228,361.39, and there is no allegation by plaintiffs that he received any of this

20  amount.  Jones Trial Testimony, July 15, 2010 at 10:16-10:23 a.m.).  Harlow withdrew

21  $40,000 from the HELOC by a check payable to defendant dated December 12, 2002,

22  which he received and cashed.  *Exhibit 12.*  Harlow withdrew $30,000 from the HELOC

23  by a check payable to defendant dated January 23, 2003, which he received and cashed.

24  *Exhibit 13.*  An account statement for Harlow's Morgan Stanley Account for the year

25  ending December 31, 2003 showed that she made three withdrawals of $50,000 each on

26  May 28, 2003, June 5, 2003 and June 6, 2003 payable to Vincent Jones through one wire

27

28

1 transfer and two checks.  *Exhibit 18.*[2]  These amounts given to defendant by Harlow total

2 $220,000.  There is no allegation in the complaint that defendant received any additional

3 amounts from Harlow.  Complaint at 2-8, ¶¶ 1-51.  There is no evidence that defendant

4 exercised his authority under the special power of attorney to incur any indebtedness on

5 behalf of Harlow or make any withdrawals from her bank or securities accounts.

6      However, defendant in his testimony stated that Harlow had given him the funds

7 for various reasons.  Defendant testified that he was a licensed California general

8 contractor and had his own construction business called Vincent Jones Construction,

9 which was a sole proprietorship.  Jones Deposition Testimony at 8-10.  Defendant

10 testified that his construction business was primarily in residential construction and that

11 his company was operating between 1989 and 2007.  *Ibid.*  In 2007, defendant was

12 employed as an estimator for Laurus Construction, and he became unemployed in June

13 2008.  *Ibid.*  Defendant testified that in 1989, he first worked for Harlow at the request of

14 her son, Richard Harlow, when he did a remodeling job on a small bathroom for the rental

15 unit in the back of the Property.  *Ibid.*

16      Between 1989 and 1999, defendant did other construction jobs for Harlow at the

17 Property, including minor plumbing repairs, tin ceiling repairs in the living room, redoing

18 the faux fireplace, and a kitchen remodel in the rental unit as well as the bathroom

19 remodel in the unit.  Jones Deposition Testimony at 23-25, 42-65.  Between 1999 and

20 2005, defendant testified that he did additional remodeling work for Harlow at the

21 Property, including for the garage, the deck, the kitchen and a doorway as well as

22 exterior and interior painting and electrical work.  *Ibid.*  Harlow also had a vacation home,

23 a cabin near Sequoia National Park, which she asked defendant to do some work on.

24 Jones Trial Testimony, July 15, 2010 at 11:36 to 11:47 a.m.; Jones Deposition Testimony

25 at 78-82.  Defendant testified that Harlow asked him to help her finish the cabin and that

26

27 [2]   The Morgan Stanley Account yearly statement for 2003 also indicated that the account had a net asset value of $117,236.89 (based on securities with an asset value of $253,652.41 and an outstanding margin loan of $136,415.52).

28

1  he worked on the project for Harlow for five years from 2002 to 2007, which he did at cost

2  because they were friends. *Ibid.*

3  In his testimony, plaintiffs' witness, Dennis Klarin, the former trustee, confirmed

4  that defendant had performed construction work on the Property, but he testified that the

5  quality of work performed by defendant was poor and that he had to hire new contractors

6  to redo the work.  Klarin Trial Testimony, July 15, 2010 at 10:02 to 10:05 a.m.

7  Defendant testified that he and Harlow were friends for many years since 1989 as

8  a result of the construction work he did for Harlow and the social visits he paid to Harlow.

9  Jones Trial Testimony, July 15, 2010 at 11:46 a.m. to 12:00 p.m.; Jones Deposition

10  Testimony at 13-29.  Harlow was a retired teacher, who lived in her home, the Property,

11  an older home on Balboa Island in Newport Beach, California.  Trial Declaration of

12  Richard Harlow at 2-3; *Exhibit 1.*  Harlow was divorced in 1979 and did not remarry.  *Ibid.*

13  Her son is Richard Harlow, Jr., who introduced defendant to Harlow.  *Ibid.*  Defendant

14  testified that he met Richard Harlow on a remodeling job in Newport Beach.  Jones

15  Deposition Testimony at 13-15.  Richard Harlow was the gardener for the owner of the

16  project.  *Id.* at 14.  Defendant and Richard Harlow met at that job, and Richard Harlow

17  told defendant that his mother needed some work done on her house.  *Ibid.*

18  During the time that defendant did work for Harlow, the social visits he made to

19  Harlow were regular, and during the last five years of work between 2000 and 2005, were

20  at least once every Friday, and according to defendant, they talked about "everything,"

21  including life, health, family and politics.  Jones Deposition Testimony at 23-29.

22  Defendant testified that he had an accident in April 2001 in which he lost his fine motor

23  control in his right hand after falling off a ladder and that this meant that he was not able

24  to do "high end" work himself and had to go into remodeling contracting work.  *Id.* at 11-

25  13, 39-42.  Defendant testified that he told Harlow about his accident and his need to

26  change his business and that in 2002, she offered to provide him with monetary

27  assistance.  *Ibid.*  Defendant also talked to her about his real estate projects, and after

28  talking with her, she agreed to invest in his projects.  *Id.* at 29-42.  Defendant testified

9

1  that Harlow gave him the $220,000 to help him in his business after the accident and that

2  she let him deduct the value of his work for her on the remodeling jobs for the Property

3  and the cabin from these funds.  *Ibid.*  Defendant testified that he also helped Harlow to

4  make her mortgage payments and insurance on the Property as well as to pay for her

5  storage unit between 2002 and 2006.  Jones Deposition Testimony at 117, 128-136.  The

6  evidence indicates that between 2002 and September 2006, defendant paid

7  approximately $66,000 towards Harlow's monthly mortgage payments from the HELOC.

8  *Exhibits 11, 15 and 16.*

9       Defendant also testified that Harlow authorized him to invest the funds in his real

10  estate projects after they discussed these projects.  Jones Trial Testimony, July 15, 2010

11  at 11:46 a.m. to 12:00 p.m.; Jones Deposition Testimony at 30-36.  Defendant further

12  testified that he first invested Harlow's funds as well as his own into the Long Beach

13  property, which was sold and reinvested into the four undeveloped parcels of land in

14  Riverside County near Cabazon, which he intended to develop.  *Ibid.*  Defendant testified

15  that he and Harlow talked about the Cabazon projects, that he took her out to look at the

16  projects, and that she agreed to invest in the projects.  *Ibid.*  Defendant testified that he

17  built two houses on the Riverside parcels, but the timing of the project was bad because

18  of the downturn in the real estate market, which forced him to sell the properties at a loss.

19  *Ibid.*  Defendant testified that he lost his money and Harlow's money in these

20  investments, and this precipitated his having to file for bankruptcy.  *Ibid.*

21       Defendant testified that the monies given to him by Harlow were to compensate

22  him for the construction work he did for her and for investment in his real estate projects,

23  and not for loans to assist him in his real estate projects.  Jones Trial Testimony, July 15,

24  2010 at 11:46 a.m. to 12:00 p.m.  Having heard defendant's testimony as well as the

25  testimony of plaintiffs' witnesses and the other evidence presented in this case, the court

26  finds that defendant's testimony to be credible and does not find by a preponderance of

27  the evidence that as alleged by plaintiffs in the complaint that defendant did not make

28

1  representations to Harlow that he was borrowing the monies from her with a promise to

2  secure the loans with the real property which he was developing.

3        The evidence indicates that defendant and Harlow were friends, that Harlow

4  trusted defendant to do construction work for her at her primary residence and at her

5  vacation home, that defendant reasonably expected that he was entitled to compensation

6  for the construction work, that Harlow wanted to help defendant in his business, that

7  defendant was helping Harlow in her financial affairs by making payments on the

8  mortgage and other items, and that most likely, due to their friendship and defendant's

9  prior construction work for her, Harlow agreed to invest some of her money with

10 defendant in his real estate projects.  Although Harlow apparently trusted defendant to

11 help her on construction improvements on her house and her cabin, she made her own

12 independent financial decisions which indicates to this court that she knew what she was

13 doing and was not unduly influenced by defendant.  The HELOC secured by the new

14 trust deed on her house was capped at $300,000, including the payment of the existing

15 mortgage of approximately $228,000.  *Exhibits 9 and 10.*  Only the balance of HELOC

16 was used for fixing up her house or cabin or investment with defendant along with some,

17 but not all, of the value of the securities in Harlow's Morgan Stanley Account (which had

18 over $250,000 in securities at the time of the withdrawals of $150,000 made to

19 defendant, though encumbered by a margin loan of about $130,000).  The only

20 disbursements made by Harlow to defendant were made by Harlow herself in checks she

21 wrote herself and a wire transfer she authorized.  According to her son, Richard Harlow,

22 Harlow managed her financial affairs mostly by herself.  Trial Declaration of Richard

23 Harlow at 3.  When Harlow was diagnosed with a serious illness in spring or summer

24 2004, she planned for the disposition of her estate by creating a revocable living trust and

25 writing her will in which she named her son as the sole beneficiary, who should be

26 considered the "normal object of the testator's bounty."  *Id.* at 2; *Exhibits 2 and 3;* see

27 also, 14 Witkin, *Summary of California Law, Wills and Probate,* § 127 at 191 (2005).  It is

28 unfortunate that Harlow's investment with defendant was improvident due to the

1  downturn in the market and the funds were lost.  However, as defendant testified, he lost

2  his money invested in the projects as well, necessitating his bankruptcy filing.

3       Plaintiffs have not offered evidence that Harlow's funds were not used to pay her

4  mortgage expenses, for construction work performed by defendant or in defendant's real

5  estate projects, but were diverted for defendant's personal purposes, which could

6  indicate fraud.  Defendant's testimony that he and Harlow discussed her funds being

7  invested in his real estate projects and that she agreed to it is credible and not rebutted

8  by plaintiffs.  The evidence indicates that defendant used the funds in his real estate

9  projects as he said he would to Harlow and that he made no misrepresentations to

10  Harlow.  Plaintiffs' allegations that Harlow "always reasonably believed that at the

11  appropriate time and upon her demand, Defendant would return the principal loan

12  amount plus any profits," Complaint at 5, ¶ 30, are suggestive of an investment rather

13  than a loan.  Because plaintiffs have not proved the first element of § 523(a)(2)(A) that

14  defendant made the alleged representations to induce Harlow to make a secured loan to

15  him, their first cause of action fails.  Accordingly, the court finds that plaintiffs have failed

16  to prove by a preponderance of the evidence that defendant obtained Harlow's funds

17  through false pretenses or representations and denies their claim under 11 U.S.C. §

18  523(a)(2)(A).

19       II.       Plaintiffs' second claim for relief under 11 U.S.C.  § 523(a)(4)

20                 (defalcation in a fiduciary capacity)

21       The court concludes that any alleged debt owed by defendant to plaintiffs is not

22  excepted from dischargeable for defalcation while acting in a fiduciary capacity pursuant

23  to 11 U.S.C. § 523(a)(4).  To prevail on a cause of action for nondischargeability based

24  on fraud or defalcation in a fiduciary relationship under § 523(a)(4), a creditor must prove

25  (1) the debtor was acting in a fiduciary capacity; and (2) while acting in that fiduciary

26  capacity, the debtor engaged in fraud or defalcation.  *Lovell v. Stanifer (In re Stanifer)*,

27  236 B.R. 709, 713 (9th Cir. BAP 1999).  The court looks to federal law to determine

28  whether or not a relationship is fiduciary in nature under § 523(a)(4).  *Ragsdale v. Haller*,

780 F.2d 794, 795-796 (9th Cir. 1986). "Fiduciary capacity under § 523(a)(4) is narrowly construed to apply to only express trust relationships." 4 March and Ahart, California Practice Guide: Bankruptcy, at 22-69, ¶ 22:608, *citing In re Stanifer,* 236 B.R. 709, 713 (9th Cir. BAP 1999). Harlow gave defendant a special power of attorney to access her financial accounts and manage and improve her real estate interests and provided him with funds totaling $220,000. While these facts are indicative of an express trust relationship, the evidence does not, however, indicate that defendant engaged in fraud or defalcation. The evidence indicates that Harlow gave the funds to defendant of her own volition because they were friends and she wanted to help him in his business after his accident, she wanted to pay him for the construction work on her residence and her vacation home, he was helping her pay some of her expenses, including her mortgage, and she wanted to invest in his real estate projects. Defendant's use of the funds was consistent with these purposes, and there is no showing that the funds were used for other purposes which would be indicative of fraud. Accordingly, the court finds that plaintiffs have not shown by a preponderance of the evidence that defendant owes them a debt based upon fraud or defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4).

III.    Plaintiffs' third cause of action under 11 U.S.C. § 523(a)(6)

(willful and malicious injury)

Plaintiffs' third cause of action alleges that the debt owed to plaintiffs by defendant is excepted from discharge under 11 U.S.C. § 523(a)(6) on grounds that the debt arose from a willful and malicious injury by defendant to Harlow, i.e., defendant converted the funds of $220,000 that Harlow entrusted to him. Complaint at 7, 8-9, ¶¶ 47-48, 56-57; *see also, In re Su*, 290 F.3d 1140 (9th Cir. 2002). "The willful injury requirement is met when shown that defendant had a substantive motive to inflict the injury or that defendant believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1208 (9th Cir. 2001). "Willful" means a deliberate or intentional act that necessarily leads to injury. Willful requires not only an

1  intentional act that causes injury, but an intentional act done with the purpose of causing

2  injury or while the actor was substantially certain that injury would result. *Kawaauhua v.*

3  *Geiger*, 523 U.S. 57, 61-62(1998).  An injury is "malicious" when it is caused by "a

4  wrongful act, done intentionally, which necessarily causes injury, and which is done

5  without just cause or excuse." *In re Jercich*, 238 F.3d at 1208.

6      At trial, plaintiffs failed to prove by a preponderance of the evidence that

7  defendant owes them a debt in which he acted willfully and maliciously in receiving the

8  funds given him by Harlow and in spending these funds.  In the complaint, plaintiffs

9  alleged:

10      (1) Between November 2002 and January 2003, Defendant received the sum of

11          $70,000 as a loan out of Harlow's Wells Fargo equity line with Harlow's

12          consent, which he then converted for his own use and benefit, without Harlow's

13          knowledge or consent;

14      (2) In 2003, Defendant received the sum of $150,000 as a loan out of Harlow's

15          Morgan Stanley Account with Harlow's consent and converted the same to his

16          own use, without Harlow's knowledge or consent.

17  Complaint at 7, ¶¶ 47-48.

18      Plaintiff contends that defendant committed the tort of conversion under California

19  law by keeping or dissipating the funds entrusted to him by Harlow for his personal

20  purposes, without turning the proceeds of his real estate projects to Harlow.  California

21  law provides that "[t]he elements of conversion are the creditor's ownership or right to

22  possession of the property at the time of the conversion; the debtor's conversion by a

23  wrongful act or disposition of property rights; and damages." *Thiara v. Spycher Bros. (In*

24  *re Thiara).* 285 B.R. 420, 427 (9th Cir. BAP 2002), *citing Farmers Ins. Exchange v. Zerin,*

25  53 Cal.App.4th 445, 451 (1997).  The court finds that plaintiffs have not shown, by a

26  preponderance of the evidence, that defendant converted the assets belonging to Harlow

27  by converting the funds to his personal purposes.  Defendant in his trial testimony

28  acknowledged that he received these funds from Harlow in the amounts recited above,

14

1    $70,000 from Harlow's home equity line of credit and $150,000 from Harlow's Morgan

2    Stanley Account.  Defendant testified that as a friend, Harlow gave him these funds to

3    help him in his business, to compensate him for the construction work he did for her on

4    the Property and the vacation home, to help her pay her mortgage and other expenses

5    and to invest in his real estate projects, not as loans as alleged by plaintiffs.  The court

6    finds that plaintiffs have not rebutted defendant's testimony regarding Harlow's purposes

7    in giving the funds to him or his actual use of the funds which was consistent with

8    Harlow's purposes in giving him the funds, and therefore, the court does not find that

9    plaintiffs have shown by a preponderance of the evidence that defendant had the

10   subjective motive to inflict the injury on plaintiffs or that he believes that the injury was

11   substantially certain to occur from his conduct.  Thus, the court does not find that

12   plaintiffs have shown by a preponderance of the evidence that defendant's subjective

13   intent satisfies "willfulness" standard of § 523(a)(6).

14         The court also finds that plaintiffs have failed to show that any injury caused by

15   defendant to them was "malicious," i.e., caused by "a wrongful act, done intentionally,

16   which necessarily causes injury, and which is done without just cause or excuse." *In re*

17   *Jercich*, 238 F.3d at 1208.  For plaintiffs, the issue is not so much defendant's receipt of

18   the funds, but his use of the funds in the real estate projects.  However, the court finds

19   that defendant's testimony that he and Harlow discussed his real estate projects and that

20   she agreed to invest in the projects, especially after he showed her the Cabazon projects,

21   to be credible.  The evidence indicates that defendant used the funds in his real estate

22   projects as he told Harlow he would, that she knew he was going to use the funds in his

23   real estate projects and that she agreed to that use of the funds.  Thus, the court

24   concludes that plaintiffs have not shown by a preponderance of the evidence that

25   defendant owes them a debt as a result of a willful and malicious injury within the

26   meaning of 11 U.S.C. § 523(a)(6).

27         ///

28

15

1    IV.    Conclusion

2        For the foregoing reasons, the court concludes that plaintiffs have not met their

3    burden of proving by a preponderance of the evidence that defendant owes a debt to

4    them in the alleged amount of $220,000, which is excepted from discharge under 11

5    U.S.C. § 523(a)(2)(A), (4) or (6).  Accordingly, the court denies plaintiffs' claims and

6    dismisses them with prejudice.

7        This memorandum decision constitutes the court's findings of fact and conclusions

8    of law.

9        A judgment consistent with this memorandum decision is being filed concurrently

10    herewith.

11                                        ###

12

13

14

15

16

17

18

19

20

21

22

23

24

DATED: September 21, 2010

25                                        _____
                                         United States Bankruptcy Judge

26

27

28

16

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  **MEMORANDUM DECISION RE:
ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C.
§523(a)(2), (4) and (6)**
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be
served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following
person(s) by the court via NEF and hyperlink to the judgment or order. As of **_09/20/2010_**, the following
person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding
to receive NEF transmission at the email address(es) indicated below:

- Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or
order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or
entity(ies) at the address(es) indicated below:

Vincent Lee Jones
POB 419
Main St No 113
Huntington Beach, CA 92648

Ursula McDonnell
Law Offices of Michael J Buley
1103 Quail St
Newport Beach, CA 92660

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment
or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete
copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a
proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es),
facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page